# SUMMONS
## COURT OF COMMON PLEAS
## LAKE COUNTY OHIO

RECEIVED JAN 27 2014

BRYAN ANTHONY REO
      Plaintiff

VS.

Case Number: **14CV000129**

Judge EUGENE A. LUCCI

VERIZON WIRELESS
      Defendant

To the following named DEFENDANT(S):
    VERIZON WIRELESS
    1 VERIZON WAY
    BASKING RIDGE NJ 07920

You have been named a Defendant in a complaint filed in the Lake County Court of Common Pleas, Lake County Courthouse, Painesville, Ohio. A copy of the complaint is attached hereto. The name and address of the plaintiff's attorney is:

    PRO SE

You are hereby summoned and required to do the following:

1. Within 28 days after service of this Summons upon you, serve a copy of an Answer to the Complaint on the Plaintiff's Attorney or on the Plaintiff, if he/she has no attorney of record;

2. Within 3 days after you serve the Plaintiff or the Plaintiff's Attorney, file an Answer with your original signature with the Lake County Clerk of Court.

Calculations of time are exclusive of the day of service.

If you fail to appear and defend, judgment by default will be rendered against you for the relief demanded in the complaint.

Maureen G. Kelly
Clerk, Court of Common Pleas
Lake County, Ohio
25 N. Park Place
Painesville OH 44077

By _____
Deputy Clerk

January 17, 2014

In Lake County Cou
Lake Cour  14CV000129
　　　　　　EUGENE A. LUCCI

BRYAN ANTHONY REO )
7143 Rippling Brook Lane )
Mentor, Ohio 44060 )
) Case No
)
Plaintiff, )
) JURY DEMAND REQUESTED
v. )
) CIVIL COMPLAINT
) (Unlawful Telemarketing)
)
Verizon Wireless )
1 Verizon Way )
Basking Ridge, New Jersey 07920 )
)
Defendant. )

## COMPLAINT

BRYAN ANTHONY REO (Plaintiff), alleges the following against Verizon Wireless (Defendant):

## INTRODUCTION

1. Plaintiff's Complaint is based on the Telephone Consumer Protection Act, *47 U.S.C. 227 et seq.* (TCPA) and the Ohio Consumer Sales Practices Act ORC § 1345.02 and ORC § 1345.09(B)

## JURISDICTION AND VENUE

2. Jurisdiction of this court arises pursuant to *47 U.S.C. 227(3)(a)*, which states "A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State, an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation."

3. Because Defendants conduct business in Ohio, personal jurisdiction is established.

4. Venue is proper pursuant to *47 U.S.C. 227(3)(a)*.

## PARTIES

5. Plaintiff is a natural person who resides in Mentor, Lake County, Ohio and is being harassed by the constant delivery of advertisements to his cellular phone, and Plaintiff is a "person" as that term is used in *47 U.S.C. 227(3)*.

6. Pursuant to the definitions outlined in *47 U.S.C. 227a(1-5)*, Defendants are engaged in electronic telecommunication solicitation for the purpose of delivering unsolicited advertisements, with such advertisements being directed to Plaintiff on his cellular telephone in express violation of *47 U.S.C. 227b(3)*.

7. Defendant Verizon Wireless is a corporate entity headquartered in Basking Ridge, New Jersey.

8. Defendant is engaged in the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person, and is engaged in "telephone solicitation" as that term is defined by *47 U.S.C. 227a(4)*.

9. Defendant is a telephone solicitor that in the ordinary course of business, regularly, on behalf of itself or others, engages in telephone solicitation.

## FACTUAL ALLEGATIONS

10. Defendant has contacted Plaintiff on his cellular phone and has delivered at least twenty Multimedia Message Service [hereafter MMS] advertisements to the cellular phone of the Plaintiff in recent months on behalf of itself and or its affiliates, with the use of an

automated device which the Plaintiff did not authorize with prior express consent. They are using an app known as "Daily Scoop," which came pre-installed on the phone and which cannot be removed, to direct advertisements to Plaintiff's cellular phone. There is no mechanism for deleting or otherwise permanently removing this app from the phone [which is a basic LG Cosmos, not a smart phone] and the presence of this app on the phone was not disclosed at the time of purchase of the phone. At no time did Plaintiff install this app on his cellular phone or request that Defendant [or any other individual or entity] place said app on his cellular phone.

11. The Daily Scoop app also appears to automatically go online and download updates and new content, with Defendant having an FAQ section on their website that states, in part, *"If you do not subscribe to a unlimited data feature to your calling plan, you may, depending upon your plan, incur data charges"* in regards to whom will pay for the automated actions undertaken by the app that comes pre-installed and automatically activated on the phone and which cannot be removed.

12. Additionally it appears that Defendant will only remove a customer from the app subscription list if they upgrade their data plan and pay a fee, in essence charging a customer to "opt out" in what reeks of bad faith.

13. Plaintiff has neither requested nor authorized contact by Defendant and has never given express prior consent to have unsolicited advertisements directed to his cellular phone by Defendant. Indeed approximately 12 to 18 months ago Plaintiff was receiving upwards of several hundred of these advertisements and Plaintiff retained the services of a computer information technology expert who was able to de-activate the application, at which time

the advertisements stopped. However, it appears that Defendant has remotely re-activated the application since the advertisements are back.

14. Defendant places unsolicited MMS advertisements to Plaintiff directly on his cellular phone through the App itself, with no number appearing attached to any of the advertisements and without disclosing the specific identity of the sender in any way, shape, or form. The advertisements fail to state contact/identifying information, be it mailing address, telephone number, email address, website address, or the name of a registered business, by which Plaintiff might be able to contact the sender and demand the advertisements stop.

15. Plaintiff spoke with Defendant about this in a conversation on 9 January 2014 and Defendant confirmed that the MMS advertisements were delivered by Verizon Wireless but insisted that Verizon Wireless is not liable due to their absurd self-serving theory that since they are "merely delivering" MMS messages on behalf of Verizon affiliates and they are not the designer of the advertisement, they cannot be held responsible since all they do is deliver the advertisement and cause it to show up on Plaintiff's phone. Defendant's line of reasoning is the equivalent of two men standing in front of a barn, the first man handing a lit Molotov cocktail to the second man, the second man throwing it at the barn and then declaring, "I am not responsible, the first man handed me the Molotov cocktail, all I did was deliver it." Defendant is responsible for the actions of the Daily Scoop app that comes pre-installed/pre-loaded and automatically activated on the phones that they sell.

16. The nature of the MMS messages being delivered is such that they are incredibly burdensome to Plaintiff. The advertisement will slowly stream/scroll onto Plaintiff's

cellular phone screen until it occupies the entire screen, only then does an option to dismiss/exit the advertisement appear and even after selecting the dismiss option it still takes another 8-10 seconds before the advertisement/data message is gone and the phone can again be used for purposes for which Plaintiff maintains it. Every time an advertisement is sent in this manner to Plaintiff's phone it results in a situation where Plaintiff's phone is essentially "frozen" [occupied by the advertisement] for around 20 seconds, during which time Plaintiff may not make a call and may not accept an incoming call until the advertisement has been dismissed and finally clears the screen. Plaintiff believes that being unable to use his phone for upwards of 20 seconds could constitute a danger if it became necessary to dial an emergency number. For people who have no landline and rely solely on a cellular phone, this 20 second delay could prove fatal in the event of an emergency situation. It could also be terribly damaging if Plaintiff missed an important business call about a time sensitive matter.

17. Defendant delivers unsolicited and unauthorized telemarketing MMS messages to Plaintiff at telephone number: 440-313-5893. Plaintiff's cellular phone.

18. Defendant has delivered no less than 20 MMS advertisement messages to Plaintiff's cellular phone between October 2013 and 27 December 2013.

19. The two most recent MMS messages to Plaintiff, with Defendant using an automated app device to deliver an unsolicited sales message were on 12/20/2013 at approximately 4:25 pm EST and 12/27/2013 at approximately 4:28 pm EST.

20. While receiving the advertisements Plaintiff utilized a digital camera to take pictures of many of the advertisements on the screen of his cellphone [clearly showing the entire

cellular phone with the advertisement and the time clearly displayed] and wishes it to be known that these pictures may be entered as evidence at some later point.

## COUNT I
## DEFENDANT VIOLATED THE TELEPHONE CONSUMER PROTECTION ACT

21. Defendant violated the TCPA based on the following:

   a. Defendant violated §227b(1) of the TCPA by engaging in conduct the natural consequence of which was to utilize Plaintiff's cellular phone resources and rob him of his time.

   b. Defendant violated §227b(1) of the TCPA by causing an MMS advertisement to be delivered and engaging Plaintiff with an unsolicited sales advertisement data message, with the intent to profit at the expense of Plaintiff.

   c. Furthermore, Plaintiff alleges that the violations were willful with a disregard to TCPA and to recent FCC rulings that require express prior consent for the use of automated devices to deliver messages/advertisements to cellular phones. Additionally, given that a cellular phone number was contacted by an automated system delivering advertisements it can be reasonably concluded that Defendant does not exercise due diligence in assuring that cellular phone numbers are excluded from its automated message delivery system. In fact Defendant's advertisements are specifically designed for, and targeted at, cellular phones. Clearly Defendant does not adhere to the relevant provisions of the TCPA.

   d. For the purposes of the law these violations were willful. The Ohio Supreme Court has adopted a definition requiring only that the defendant knew of the facts that constituted the offense, not that the defendant knew that this conduct violated the

law. See *Charvat v. Ryan*, 879 N.E.2d 765, 770 (Ohio 2007).

e. Defendant committed no less than 20 violations of Count I.

## COUNT II
## DEFENDANT AGAIN VIOLATED THE TELEPHONE CONSUMER PROTECTION ACT

a. Defendant violated §227d(3) of the TCPA by using a sales message/advertisement that failed to disclose the business, individual, or other entity delivering/making the message/contact.

b. Furthermore, Plaintiff alleges that the violation was willful with a disregard to the TCPA. Defendant is in absolute control over the contents of their digital message and has all the power in the world to comply with the law by having their message identify the business somewhere on the digital advertisement.

c. For the purposes of the law these violations were willful. The Ohio Supreme Court has adopted a definition requiring only that the defendant knew of the facts that constituted the offense, not that the defendant knew that this conduct violated the law. See *Charvat v. Ryan*, 879 N.E.2d 765, 770 (Ohio 2007).

d. Defendant committed no less than 20 violation of Count II.

## COUNT III
## DEFENDANT VIOLATED THE OHIO CONSUMER SALES PRACTICES ACT

a. Defendant violated the Ohio Consumer Sales Practices Act ORC § 1345.02 and ORC § 1345.09(B) by "knowingly failing to provide disclosures required under state and federal law" in that they did not disclose their identity when delivering the advertisements as required by the TCPA. Since Defendant is delivering the

advertisements with the use of the Daily Scoop application, it stands to reason that they could include the required identifying information in the advertisement.

b. Defendant committed no less than 20 violation of Count III.

WHEREFORE, Plaintiff, BRYAN ANTHONY REO respectfully requests judgment be entered against Defendant Verizon Wireless. for the following:

22. Statutory damages of $500.00 for each of the aforementioned 40 violations from Count I and Count II pursuant to the Telephone Consumer Protection Act, *47 U.S.C. 227(c)(5)*, for a total amount of $20,000.00 dollars from Count I and Count II.

23. Treble damages for each violation from Count I and Count II as they were willful or knowing [raising the total amount of damages from Count I and Count II to $60,000.00 dollars].

24. Statutory damages of $200.00 for each of the violations in Count III pursuant to the Ohio Consumer Sales Protection Act, ORC 1345.09 for a total amount of $4,000.00 in damages from Count III.

25. Treble damages for each violation from Count III [raising the total amount of damages from Count III to $12,000.00 dollars]

26. The total amount in damages [presently $72,000.00 dollars] may be modified at a later date as the exact number of violations may be substantially increased after discovery when Plaintiff has obtained specific and exact records from Defendant as to the dates, times, and precise number of advertisements that were sent to Plaintiff. Plaintiff will be utilizing discovery to go back and look at violations during the previous four years as

provided by the TCPA's statute of limitations and two years as provided by the OCSPA and will then modify accordingly the amount of damages requested.

27. Any applicable legal fees, filing fees, court costs, and other associated fees that Plaintiff may incur from bringing forth and conducting this complaint.

28. Any other relief that this Honorable Court deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff, BRYAN ANTHONY REO, requests a jury trial in this case.

RESPECTFULLY SUBMITTED,

*Bryan Reo* 1/16/2014

Bryan Anthony Reo
7143 Rippling Brook Lane
Mentor, Ohio 44060
Phone (440) 313-5893
E-Mail: breo08@jcu.edu
Plaintiff

# MAUREEN G. KELLY

## CLERK OF COURTS

### Lake County Common Pleas Court

## ATTENTION ALL PARTIES TO THE CASE

Whether you are represented by an Attorney or representing yourself in this Legal action, LAKE COUNTY LOCAL COURT RULES require that all participants familiarize themselves with, and follow the requirements of each court.

Pre-trial orders and procedures are available on our website at

www.lakecountyohio.gov/coc

Select DOWNLOADS

Scroll to PRE-TRIAL ORDERS

Select the appropriate pre-trial order/procedure for YOUR respective case and Judge.

If you are unable to access or unclear as to which pre-trial order/procedure applies to you, contact the Office of the Clerk of Courts, New Case Department (440.350.2657) during normal business hours and a copy will be immediately mailed to you.

**Maureen G. Kelly, Clerk of Courts**
Revised 7/1/2013 Pretrial orders

